[No. B231720. Second Dist., Div. Six. Aug. 14, 2012.]

SHERRILL M. SILK, Plaintiff and Respondent, v.
PHILLIP FELDMAN, Defendant and Appellant.

548

COUNSEL

Hanger, Steinberg, Shapiro & Ash, Jody Steinberg and Whitney L. Bost for Defendant and Appellant.

Lawrence C. Ecoff and Philip H.R. Nevinny for Plaintiff and Respondent.

OPINION

**GILBERT, P. J.**—Not all speech is free. Here, speech can be costly.

This is an appeal from the denial of a special motion to dismiss a complaint for libel and defamation. The motion was brought pursuant to Code

of Civil Procedure section 425.16, the strategic lawsuit against public partici-
pation (anti-SLAPP) statute.[1] We affirm.

## FACTS

The Malibu Bay Club is a 136-unit residential beachfront development in
Ventura County. The development consists of 36 townhomes and 100 condo-
miniums. All owners are members of a corporation homeowners association,
the Malibu Bay Club (the Club). Some residents are also members of a
separate homeowners association, the Malibu Bay Owners Association
(MBOA).

Sherrill M. Silk and Phillip Feldman are owners and residents. Silk was on
the Club's board of directors from 1996 until 2000. Feldman has been a
director since 2009.

In 1998, Montgomery Knox, the son of the Club's developer, brought a
quiet title action against the Club, its individual members and the MBOA, to
establish his ownership of 36 parking spaces on the Club's premises. In 1999,
the trial court ruled Knox owned the parking spaces along with the right to
use a portion of the Club's common area known as the "sandbox." The ruling
prompted the Club and Knox to resolve the remaining issues through
mediation. This resulted in a settlement in Knox's favor in 1999.

Beginning in 1999, Knox offered the parking spaces for sale to the general
public and members of the Club for $25,000 per space. When Silk purchased
six parking spaces in December 2003, the price for the six spaces was
$114,000 or $19,000 each. The purchase included an assignment of Knox's
rights to maintain the parking spaces, the right to gate entry cards and the
right to require the Club to enforce its parking rules.

In response to requests for gate cards from people who own parking
spaces, the Club's board of directors sent an undated letter to its members.
The letter stated that Silk was "legal liaison" in the Knox settlement
negotiations and that she purchased six parking spaces in consideration of
$10.

On February 2, 2009, Silk's attorney wrote the board demanding a
retraction and threatening legal action. On March 7, 2009, the board sent a
letter to its members. The letter stated that two other directors were with Silk
on the committee that oversaw the Knox litigation, and that Silk purchased
her six parking places for $114,000.

---

[1] All statutory references are to the Code of Civil Procedure unless stated otherwise.

On June 2, 2009, Feldman wrote to the Club members on his law office letterhead to encourage the members to vote for him for the Club board. The letter stated that Silk was also running for the board. Feldman accused her of overseeing the Knox lawsuit so she could obtain parking spaces for her personal use. Silk was not elected to the board.

On August 16, 2010, after Silk had been off the board for 10 years, Feldman sent another letter to Club members. The letter was headed "Phil's historical take on Malibu Bay Club, past, present, and future." The letter spoke of a derivative action against the Club. The letter also stated in part: "As you know, Board Members, like any elected representatives, owe allegiance and loyalty to the people who elect them. They may not self-serve or 'feather their own nest[.]' Attorney Sher[r]ill Silk was on the Board and without the knowledge of the lawyers who settled the Knox matter, she and president Don Desfor cut secret deals to purchase nine parking spaces for themselves with manufactured rights to use our beach along with each space. They never revealed what they did and never apologized. Successive 'friendly' Boards kept their secret for a decade."

On October 5, 2010, Silk filed the instant complaint for defamation and libel per se. The complaint was based on the above quoted paragraph from Feldman's letter of August 16, 2010.

Feldman moved to dismiss under the anti-SLAPP statute. Feldman's motion claimed his publication is protected under section 425.16, subdivision (e)(2) as a statement made in connection with an issue under consideration by a judicial body; subdivision (e)(3) as a statement made in a public forum in connection with an issue of public interest; and subdivision (e)(4) other conduct in furtherance of the right of free speech.

In opposition to the motion, Silk disputed that Feldman's statement qualified as an exercise of the rights of petition or free speech under section 425.16, subdivision (e). Silk also submitted declarations in support of her claim that she has a probability of prevailing in her complaint.

### Silk's Declaration

Silk declared that she and two other board members served on a committee to attend mediation sessions with legal counsel in the Knox litigation. Both homeowners associations were represented by independent counsel. In addition, a separate law firm represented the individual homeowners. All members of both homeowners association boards approved the settlement agreement. Silk said she never had any agreement of any kind with Knox before or during the litigation. She never had any agreement with Desfor concerning the parking spaces.

Knox made the parking spaces available for sale to Club members and the general public beginning January 2000. In November 1999, Silk received a letter from Knox sent to all Club members, as well as a flier inserted in the local Malibu newspaper advertising the spaces for sale. The letter and flier are attached as exhibits to Silk's declaration.

In December 2003, Silk's husband asked her to sign a purchase agreement for six parking spaces he was purchasing for her as a Christmas present. The price was $114,000. The purchase included an assignment of rights Knox had acquired by the settlement. A copy of the assignment was given to the Club's board in June 2005 and the purchase agreement in March 2009. The board published the documents by mail to the entire membership. Silk received a copy of Feldman's letter shortly after August 16, 2010.

### *Desfor's Declaration*

Donald Desfor was president of the Club's board at the time of the Knox litigation. He declared that the settlement agreement was negotiated by two law firms representing the Club and MBOA, and a representative of State Farm, and was directed by a mediator. Full disclosure to the members was made at numerous meetings, in letters and in a community newsletter. Board members were urged to settle by State Farm, the mediator and the lawyers. The board took a survey of the homeowners and a large majority wished to settle. The entire settlement process was run by the lawyers with input from State Farm.

Silk's husband and another Club member also submitted declarations supporting statements made by Silk and Desfor.

The trial court denied Feldman's motion. The court found the alleged defamation was not an exercise of the right of petition or free speech.

### DISCUSSION

### I

Section 425.16, subdivision (b)(1) states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

■ Subdivision (b)(1) of section 425.16 requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing the challenged cause of action arises from the defendant's exercise of his rights of petition or free speech. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 186 [6 Cal.Rptr.3d 494].) If the court finds the defendant has made such a showing, it must then determine whether the plaintiff has demonstrated a probability of prevailing. (*Ibid.*)

Our review of the trial court's decision on the motion is de novo. (*Computer Xpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625].)

## II

Feldman contends his statements were an act of free speech as defined in section 425.16, subdivision (e)(3) and (4).

■ Section 425.16, subdivision (e)(3) and (4), provides that an act in furtherance of a person's right of free speech includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or . . . any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Courts have recognized a homeowners association functions as a quasi-governmental entity, paralleling the powers and duties of a municipal government. (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 475 [102 Cal.Rptr.2d 205].) Thus a newsletter circulated by some members of a homeowners association was deemed a "public forum" within the meaning of section 425.16, subdivision (e)(3). (*Damon, supra*, at p. 476.)

It requires no leap of logic to conclude that statements made in a letter critical of the actions of a homeowners association director may also qualify as free speech within the meaning of section 425.16, subdivision (e)(4). Certainly, if an official of a city government engaged in the conflict of interest alleged in Feldman's letter, it would be a matter of public interest. Treating a homeowners association in the same manner as a municipal government could reasonably lead to the conclusion that Feldman's letter constituted free speech in connection with an issue of public interest as specified in section 425.16, subdivision (e)(4).

■ We need not, however, make a definitive determination whether Feldman's accusations against Silk constitute an exercise of free speech

within the meaning of section 425.16, subdivision (e)(3) or (e)(4). Assuming the accusations in Feldman's letter constitute such an exercise, Silk has carried her burden of showing a probability of prevailing in the action.

### III

Feldman contends Silk has failed to demonstrate a probability of prevailing on her claim.

■ In determining whether the plaintiff has demonstrated a probability of prevailing, the court does not determine credibility or weigh the evidence. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786].) Instead, the court accepts as true the evidence favorable to the plaintiff. (*Ibid.*) The court views the defendant's evidence only to determine if it has defeated the plaintiff's evidence as a matter of law. (*Ibid.*)

Silk argues we should not consider material Feldman submitted to the trial court in reply to her opposition to the motion. She claims Feldman's reply contains new arguments and evidence to which she did not have an opportunity to respond. Because we determine Feldman's reply cannot as a matter of law defeat the evidence Silk submitted, the argument is moot. Silk's motion to augment the record with her ex parte motion to strike Feldman's reply therefore is denied as moot.

Here Silk's evidence demonstrates Feldman's allegations against her are false. She did not control the outcome of the Knox litigation; she made no agreement with Knox before or during the litigation; the parking spaces were offered for sale to all association members as well as members of the public; she did not purchase the parking spaces until years after the Knox litigation was settled, when she was no longer a member of the board; and she paid a substantial amount for the parking spaces. Any reasonable trier of fact who found Silk's evidence credible would conclude she engaged in no wrongdoing. Feldman points to no evidence that would defeat Silk's evidence as a matter of law.

Feldman argues he does not have to justify every word of the defamatory charge, it is sufficient if he can justify the substance or gist of the charge. (Citing *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 28 [53 Cal.Rptr.3d 752].) But the substance or gist of Feldman's charge is that Silk used her position as a Club official to settle a lawsuit against the Club so that she could obtain free parking spaces. Silk's evidence demonstrates the charge is false.

■ Feldman argues the defamation is privileged under Civil Code section 47, subdivision (b). Section 47, subdivision (b) protects as privileged any

publication made in a judicial proceeding. The privilege is not limited to statements made during trial, but may extend to steps taken prior to or after trial. (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 485 [99 Cal.Rptr.3d 394].) Feldman points out that his letter mentions an ongoing " 'derivative' " lawsuit by some members against the Club, as well as the possibility of an action for the involuntary dissolution of the Club.

■ A four-part test determines whether a statement is within the litigation privilege. "To be privileged a statement must (1) be made in a judicial proceeding, (2) by litigants or other authorized participants, (3) aim to achieve the litigation's objects, and (4) have some logical connection or relation to the proceeding. [Citation.]" (*O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 134 [100 Cal.Rptr.2d 602].)

Feldman argues "[t]he statement at issue was directly related to [the derivative] litigation, as it described alleged misconduct by previous Board members that impacted the current Board members and was presently causing conflict in and among the homeowners."

Feldman's argument fails to explain how the allegations against Silk "aim to achieve the litigation's objects." (*O'Keefe v. Kompa, supra*, 84 Cal.App.4th at p. 134.) As a member of the board, Feldman's aim in the derivative litigation should be to obtain a resolution favorable to the Club. It is hard to imagine anything more contrary to that objective than a letter cataloguing the board's alleged malfeasance.

Nor does Feldman explain the logical connection between the allegation Silk unlawfully obtained parking spaces and the derivative litigation. The statement that the misconduct "impacted the current Board members and was presently causing conflict in and among the homeowners" is too vague to provide the required connection.

The allegation against Silk was not privileged under Civil Code section 47, subdivision (b).

■ Feldman argues for the first time on appeal that Silk is a quasi-public person. Points not raised in the trial court may not be raised for the first time on appeal. (*Degnan v. Morrow* (1969) 2 Cal.App.3d 358, 366 [82 Cal.Rptr. 557].)

■ Feldman argues that Silk did not show she was damaged. "Where the statement is defamatory *on its face*, it is said to be libelous per se, and actionable without proof of special damage." (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 541, p. 794.) Feldman's letter on its face

accused Silk of a serious breach of fiduciary duty. That is libelous per se. Silk need not show damages. In the absence of proof of actual damages, nominal damages are awarded. (See *Triton Ins. Underwriters v. National Chiropractic Ins. Co.* (1965) 232 Cal.App.2d 829, 831, 838 [43 Cal.Rptr. 504] [affirming award of $1 and costs in the absence of proof of damages].)

## IV

Silk seeks sanctions for a frivolous appeal.

■ Sanctions for prosecuting a frivolous appeal should be used sparingly to deter only the most egregious conduct. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 651 [183 Cal.Rptr. 508, 646 P.2d 179].) Although Feldman's appeal lacks merit, it does not constitute such egregious conduct that sanctions are warranted.

The judgment (order) is affirmed. Costs on appeal are awarded to Silk.

Yegan, J., and Perren, J., concurred.

On September 12, 2012, the opinion was modified to read as printed above.