Filed 4/15/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TALEGA MAINTENANCE CORPORATION,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>STANDARD PACIFIC CORPORATION et al.,<br><br>    Defendants and Appellants. | G048282<br><br>(Super. Ct. No. 30-2012-00601360)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Gail A. Andler, Judge. Affirmed.

Newmeyer & Dillion, James S. Hultz and Uliana A. Kozeychuk for Defendants and Appellants.

The Law Offices of Jeri E. Tabback and Jeri E. Tabback for Plaintiff and Respondent.

\*        \*        \*

Plaintiff Talega Maintenance Corporation (HOA), a homeowners association, sued two developers for construction defects. The developers, who developed the residential community itself, also developed certain trails adjacent to the housing community. The trails were badly damaged during rains and flooding in 2005 and again in 2010, allegedly as a result of construction defects.

The HOA also sued three former employees of the developers. The employees were appointed by the developers to be members of the HOA's board of directors at various times since 2003.[1]

The HOA alleges the employee defendants committed fraud, negligence, and breached fiduciary duties in performing their duties as board members. In particular, the HOA contends it is not financially responsible for repairing the trails; the developers are. Yet the developer board members, who comprised a majority of the board, represented that the HOA was responsible and expended HOA funds to investigate and repair the trails.

Defendants filed an anti-SLAPP motion[2] pursuant to Code of Civil Procedure section 425.16[3] to strike the fraud, negligence, and fiduciary duty claims, contending they arise from protected statements made at the HOA board meetings. The trial court denied the motion and defendants appeal from that denial. We affirm.

---

[1] The complaint also listed the County of Orange as a defendant solely because it has an easement on the trails at issue and is a party to one of the agreements subject to the declaratory relief action. Any reference to "defendants" in this opinion excludes the County of Orange.

[2] SLAPP is an acronym for "'strategic lawsuit against public participation.'" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 815, fn. 1.)

[3] All statutory references are to the Code of Civil Procedure unless otherwise stated.

FACTS

The following facts are taken from the complaint and the declarations filed in connection with the anti-SLAPP motion.

Defendant Talega Associates, LLC purchased land for what became a 3,900 acre master planned community in San Clemente known as the "Talega Project." Ultimately, more than 3,500 homes housing more than 9,000 residents were built. Plaintiff is the homeowners association for the Talega Project. Defendant Standard Pacific Corporation (collectively with Talega Associates referred to as Developers) was a "Guest Builder" that purchased unimproved lots and built separate communities within the Talega Project. The complaint alleges the Developers planned and constructed the Prima Deshecha and Cristianitos Regional Riding and Hiking Trails (the Trails), which are the trails at issue here. Defendants Patrick Hayes, Jerome Miyahara, and James B. Yates (collectively, Developer Board Members) were employees of Talega Associates who were appointed to represent Talega Associates on the HOA's board of directors. At all relevant times, the Developer Board Members comprised a majority of the HOA's board of directors.

In approximately 2005, the Trails suffered a partial slope failure as a result of severe rains. By that time, title to a portion of the damaged property had already transferred to the HOA. The Developer Board Members represented that the HOA was responsible to pay for repairs to the property it owned — the allegedly fraudulent statement — and to that end expended over $500,000 of HOA funds. According to the complaint, however, the Developer Board Members knew, but failed to disclose, that under the relevant controlling documents, the Developers were responsible for the cost of repairs. Further, the Developer Board Members knew, but failed to disclose, that the damages were the result of the Developers' improper construction of the Trails, as explicitly pointed out to them by agents of Orange County.

In 2010 rains again damaged the Trails. This time, however, the independent board members had formed an executive committee — with no Developer Board Members — that hired its own consultants to investigate the cause of the damages. From the consultants, the independent board members learned for the first time that the Developers were bound forever to provide repairs to the Trails, that the Trails were not actually completed, and that the Trails' failures were likely the result of construction defects.

The HOA filed suit in September of 2012, alleging causes of action for breach of fiduciary duty, fraud, constructive fraud, construction defect, negligence, and declaratory relief. Each of the defendants filed anti-SLAPP motions targeting the causes of action for breach of fiduciary duty, fraud, constructive fraud, and negligence. At the hearing on the motions the court recognized it was a close call, stating, "I don't think it's a slam dunk. It could go either way. And I just want to give it some more thought as to the extent to which it might operate to strike some but not all of the allegations; or whether it is an all or a nothing." Ultimately, the court denied the motions in their entirety, stating, "[Defendants] failed to establish that any statements were an exercise of free speech. Additionally, [defendants] failed to establish that statements at issue were made before, or in connection with, an official proceeding authorized by law. Moreover, even if the statements were made in a public forum via a [homeowners association] open board meeting, [defendants] have not demonstrated that they involved a matter of sufficient public interest or an exercise of a free speech right." Defendants timely appealed.

DISCUSSION

*I. Legal Principles*

Section 425.16, the anti-SLAPP statute, subdivision (b)(1), states, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

The anti-SLAPP statute "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

"The sole inquiry under the first prong of the anti-SLAPP statute is whether the plaintiff's claims arise from protected speech or petitioning activity. [Citation.] Our focus is on the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims. [Citations.] We review the parties' pleadings, declarations, and other supporting documents at this stage of the analysis only 'to determine what conduct is actually being challenged, not to determine whether the conduct is actionable.'" (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490-491 (*Castleman*).)

As used in the anti-SLAPP statute, "'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or

5

writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or on an issue of public interest." (§ 425.16, subd. (e).)

"An order denying a special motion to strike under section 425.16 is immediately appealable. [Citations.] Our review is de novo; we engage in the same two-step process as the trial court to determine if the parties have satisfied their respective burdens. [Citations.] If the defendant fails to show that the lawsuit arises from protected activity, we affirm the trial court's ruling and need not address the merits of the case under the second prong of the statute." (*Castleman*, *supra*, 216 Cal.App.4th at p. 490.)

## II. The Constructive Fraud, Breach of Fiduciary Duty, and Negligence Causes of Action Are Not Subject to the Anti-SLAPP Statute

Of the four causes of action subject to the anti-SLAPP motions, we can immediately rule out all but the fraud cause of action. Section 425.16, subdivisions (e)(1), (e)(2), and (e)(3) apply to "any written or oral statement."[4] The breach of fiduciary duty, constructive fraud, and negligence claims are principally based on the Developer Board Members withholding information and improperly directing the expenditure of funds. These are not "written or oral statements." Accordingly, those subdivisions do not apply.

The only possible application would be subdivision (e)(4), which pertains to "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech . . . ." (See, e.g., *Liberman v. KCOP Television,*

---

[4] References to "subdivision (e)(1)," "subdivision (e)(2)," "subdivision (e)(3)," and "subdivision (e)(4)" are to section 425.16.

6

*Inc.* (2003) 110 Cal.App.4th 156 [television station's gathering of information to be used in broadcast was protected conduct]; *No Doubt v. Activision Publishing, Inc.* (2011) 192 Cal.App.4th 1018 [creation of a video game featuring the likeness of members of a famous rock band was expressive work constituting protected conduct].) Although defendants have paid lip service to the application of subdivision (e)(4), they make no effort to explain how withholding information they had a fiduciary duty to divulge, or expending funds to investigate and repair the Trails, is constitutionally protected conduct.

Instead, defendants insist that these causes of action are in fact based on express statements made at board meetings, and thus should be treated the same as the fraud cause of action. Defendants recount that plaintiff's attorney admitted at oral argument in the trial court that "[t]he fraud allegation is based on a statement that was made at a board meeting." They then leap to the following conclusion: "In fact, _all_ of the causes of action are based upon the allegation that the Defendants controlled, directed, and/or voted for certain actions taken by the HOA in connection with the Regional Trails. [Citation.] Therefore, the HOA's admission . . . extends to all of the subject causes of action." But that is a non sequitur. Controlling, directing, and voting for certain actions are not statements.

We recognize, nonetheless, that voting can constitute protected activity. (See *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 183, fn. 3 [stating in dicta, with respect to City Councilmember votes, "voting is conduct qualifying for the protections afforded by the First Amendment"].) Nonetheless, voting is not *per se* protected activity. (See *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500, 1506 (*Donovan*) [stating, with respect to the vote of a nonprofit organization board member, "The mere act of voting, however, is insufficient to demonstrate that conduct challenged in a cause of action arose from protected activity"].) Here, the HOA's claim arises from the act of spending money in violation of the Developer Board Members' fiduciary duties. The allegations in the complaint concerning the breach of fiduciary duty

7

cause of action, for example, include no mention of voting. While the expenditure of money may have been precipitated by a vote, "the fact that protected activity may have triggered a cause of action does not necessarily mean the cause of action arose from the protected activity." (*Id.* at p. 1507; see also *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1218 [conduct challenged in action alleging city failed to comply with competitive bidding requirement was not officials' communications or deliberations, but their failure to obey state and local laws].) The vote was merely incidental. Thus the anti-SLAPP statute does not apply to the HOA's causes of action for breach of fiduciary duty, constructive fraud, and negligence.

### III. The Fraud Cause of Action Is Not Subject to the Anti-SLAPP Statute

The fraud cause of action presents a closer question. The HOA alleges the Developer Board Members fraudulently misrepresented that the HOA was financially liable for repairing the Trails. The HOA's counsel conceded this representation was made at a HOA board meeting. Defendants contend subdivisions (e)(1), (e)(2), and (e)(3) apply.

#### A. Homeowners Association Board Meetings Are Not Official Proceedings

Subdivision (e)(1) applies to statements "made before a legislative, executive, or judicial proceeding, *or any other official proceeding authorized by law*." (Italics added.) Defendants contend homeowners association meetings are official proceedings authorized by law. In support of their contention they note that courts have described a homeowners association as a "quasi-governmental entity" (*Silk v. Feldman* (2012) 208 Cal.App.4th 547, 553 (*Silk*)), and that the meetings and activities of homeowners associations are heavily regulated under the Davis-Stirling Common Interest Development Act (Civ. Code, § 4000 et seq.). Neither party cited, nor have we found,

8

any case directly addressing the issue of whether homeowners association meetings are an "official proceeding" for purposes of subdivision (e)(1).

We begin our analysis with two cases that found the proceeding before it was an official proceeding authorized by law. The first is the seminal case analyzing "official proceeding," *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 (*Kibler*). The issue in *Kibler* was whether a hospital's peer review disciplinary proceedings were "'official proceedings'" for purposes of the anti-SLAPP statute. (*Kibler*, at p. 197.) The plaintiff was a doctor who had been disciplined. He sued the hospital based on statements made during the proceedings and the hospital brought an anti-SLAPP motion. (*Id.* at pp. 196-197.) In concluding the hospital peer review proceedings are official proceedings, the court relied on three considerations. First, peer review proceedings are required of hospitals and heavily regulated. (*Id.* at pp. 199-200.) Second, because hospitals are required to report the results of peer review proceedings to the Medical Board of California, peer review proceedings play a "significant role" in "aid[ing] the appropriate state licensing boards in their responsibility to regulate and discipline errant healing arts practitioners." (*Id.* at p. 200.) Third, "[a] hospital's decisions resulting from peer review proceedings are subject to judicial review by administrative mandate. [Citation.] Thus, the Legislature has accorded a hospital's peer review decisions a status comparable to that of quasi-judicial public agencies whose decisions likewise are reviewable by administrative mandate." (*Ibid.*)

The second case reaching a similar result is *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719, disapproved on other grounds by *Kibler*, *supra*, 39 Cal.4th at page 203, footnote 5. In *Fontani* a former securities broker-dealer sued his former employer based on statements the latter made to the National Association of Securities Dealers (NASD) concerning the reasons for the plaintiff's termination. (*Fontani*, at p. 725.) The issue was whether the proceeding before the NASD was an "official proceeding" for purposes of subdivision (e)(1). (*Fontani*, at p. 728.) In

9

answering in the affirmative, the court relied on the following observations: "In its capacity here, the NASD exercises governmental power because 'it is the primary regulatory body for the broker-dealer industry' and thus performs uniquely regulatory functions typically performed by a governmental regulatory agency. [Citations.] More specifically, while the NASD may perform some private functions, . . . it stands as a regulatory surrogate for the [Securities and Exchange Commission]. The federal securities laws "'*delegate* [ ] *government power*'" to [self-regulatory organizations] such as the New York Stock Exchange . . . and the NASD "to enforce . . . compliance by members of the industry with both the legal requirements laid down in the Exchange Act and ethical standards going beyond those requirements."'" (*Id.* at p. 729; see also *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1396 [administrative grievance procedure set up by Regents of the University of California, "a constitutional entity having quasi-judicial powers," deemed official proceeding].)

Next we turn to two cases holding the proceeding at issue was not an official proceeding.

In *Garretson v. Post* (2007) 156 Cal.App.4th 1508, "[t]he key issue" was "whether defendant's act of noticing a nonjudicial foreclosure sale of plaintiff's property constitutes protected activity under the anti-SLAPP statute." (*Id*. at p. 1515.) The court noted that nonjudicial foreclosure sales are governed by a comprehensive statutory framework and that the end result is a "final adjudication of the rights of the borrower and lender." (*Id.* at p. 1516.) The court also noted that nonjudicial foreclosure activity is protected by the litigation privilege. (*Id.* at p. 1518.) Nonetheless, the court concluded a nonjudicial foreclosure is fundamentally a "'private, contractual proceeding, rather than an official governmental proceeding or action.'" (*Id.* at p. 1520.) The court distinguished *Kibler* on the basis that nonjudicial foreclosures "are not closely linked to any governmental, administrative, or judicial proceedings or regulation, such as the state licensing and regulation of physicians in *Kibler*." (*Garretson*, at p. 1521.)

10

In *Donovan*, *supra*, 204 Cal.App.4th 1500, plaintiff was a former member of the board of directors of a nonprofit charitable organization who sued the organization and current board members for wrongful removal. (*Id.* at pp. 1502-1503.) Defendants contended the board meeting at which plaintiff was removed was an official proceeding because "board of directors meetings and majority voting are authorized under the Corporations Code, and the issue whether to retain [plaintiff] was an issue of consideration before the [board of directors]." (*Id.* at p. 1508.) The court rejected that contention and distinguished *Kibler* on the basis that board decisions are not subject to review by administrative mandate and because, though meetings of the board of directors meeting were authorized by statute, "the actual procedures are left to the private organizations." (*Donovan*, at p. 1508; see also *Olaes v. Nationwide Mutual Ins. Co.* (2006) 135 Cal.App.4th 1501, 1508 [private company's sexual harassment grievance protocol not an official proceeding].)

In this spectrum of cases, homeowners association meetings fall outside the scope of official proceedings. Although the word "official" in subdivision (e)(1) is not coextensive with "governmental" (*Kibler*, *supra*, 39 Cal.4th at p. 203), the case law demonstrates that nongovernmental proceedings must have a strong connection to governmental proceedings to qualify as "official." Thus, although courts have recognized the similarities between a homeowners association and a local government, even going so far as to describe a homeowners association as a "quasi-governmental entity, paralleling the powers and duties of a municipal government" (*Silk*, *supra*, 208 Cal.App.4th at p. 553), a homeowners association is not performing or assisting in the performance of the *actual* government's duties, as was the case in *Kibler* and *Fontani*. Further, unlike the hospital peer review board decision in *Kibler*, decisions by the board of a homeowners association are not reviewable by administrative mandate. Thus they have not been delegated government functions to the same extent. Finally we note that although no case has directly addressed this issue, multiple cases have addressed anti-

11

SLAPP motions arising from statements at homeowners association board meetings, and all such cases have analyzed the case under the rubric of subdivision (e)(3) or (e)(4). (See e.g., *Silk*, at p. 553; *Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1086-1087; *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 474 (*Damon*).) Our holding is consistent with the approach taken in those cases.

### B. Whether the HOA or the Developers Were Liable to Pay for Repairs to the Trails Was Not an Issue Under Consideration By a Governmental Body

Subdivision (e)(2) applies to statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body." Citing allegations in the complaint that the Developers worked closely with the County of Orange and City of San Clemente in the construction of the Trails, defendants contend "there can be no dispute that the construction and condition of the trails were issues under consideration and review by governmental agencies, and alleged statements regarding these issues were protected speech."

The problem is, the relevant issue is not the general construction and condition of the Trails. Rather, the allegedly fraudulent statement concerns *who has to pay* for repairing the Trails. There is nothing in the record suggesting the County of Orange or City of San Clemente was considering that issue.

Courts have generally rejected attempts to abstractly generalize an issue in order to bring it within the scope of the anti-SLAPP statute. For example, in the context of subdivision (e)(3), where the statement must concern an issue of public interest, the court in *World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1570, stated, "While employee mobility and competition are undoubtedly issues of public interest when considered in the abstract, one could arguably identify a strong public interest in the vindication of any right for which there is a legal remedy. 'The fact that "a broad and amorphous public interest" can be connected to a

specific dispute is not sufficient to meet the statutory requirements' of the anti-SLAPP statute. [Citation.] By focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called 'synecdoche theory of public issue in the anti-SLAPP statute,' where '[t]he part [is considered] synonymous with the greater whole.' [Citation.] In evaluating the first prong of the anti-SLAPP statute, we must focus on 'the *specific nature of the speech* rather than the generalities that might be abstracted from it.'" Similarly, here, our focus is not on some general abstraction that may be of concern to a governmental body, but instead on the specific issue implicated by the challenged statement and whether a governmental entity is reviewing that particular issue. On the record before us, this requirement is not satisfied.

### C. Who Was to Pay For Repairing the Trail Was Not an Issue of Public Interest

Subdivision (e)(3) applies to statements "made in a place open to the public or a public forum in connection with an issue of public interest . . . ." Plaintiff concedes homeowners association meetings constitute a public forum, and thus the issue boils down to whether the alleged fraudulent statements were in connection with an issue of public interest.

"The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." (*Damon, supra,* 85 Cal.App.4th at p. 479.) "Although matters of public interest include legislative and governmental activities, they may also include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 650,

13

disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 68, fn. 5.) However, "in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119.)

It is the latter requirement that is absent with respect to the fraud cause of action here. There is no indication in the record that there was any controversy, dispute, or discussion surrounding the Developer Board Members' representation that the HOA was liable to pay the repair costs. To the contrary, a declaration submitted by an independent board member states, "I believed [the Developer Board Members'] representations, as I had no reason to believe at the time that they were not telling me the truth or acting in the best interest of the Association." This suggests there was no controversy about the issue, and nothing in the record contradicts that inference. The Developer Board Members made their statements and others believed them without dispute. Given the absence of any controversy, dispute, or discussion, the issue of who was to pay for the repairs, which was of interest to only a narrow sliver of society, was not a public issue.

By contrast, in cases involving statements made at public homeowners association forums where the court found there was a public issue, the requirement of an ongoing controversy was satisfied. In *Damon,* for example, "each of the alleged defamatory statements concerned (1) the decision whether to continue to be self-governed or to switch to a professional management company; and/or (2) [the general manager's] competency to manage the Association." (*Damon*, *supra*, 85 Cal.App.4th at p. 479.) "Moreover, the statements were made in connection with the Board elections

14

and recall campaigns." (*Ibid.*) Indeed, "[b]y the end of 1997, the senior citizen residents of Ocean Hills were largely split into two camps: those who favored [the general manager's] continued service and those who wanted [him] terminated as general manager." (*Id.* at p. 472.) In *Cabrera v. Alam*, *supra*, 197 Cal.App.4th at page 1082, the statement at issue was an accusation in the midst of an election campaign that a past president had stolen money from and defrauded the homeowners association. In *Silk*, *supra*, 208 Cal.App.4th at page 551, the challenged statement was again in the context of a board election and implied an incumbent board member had engaged in self-dealing. In contrast to these cases, the total absence of controversy in the present case is plain. Accordingly, the allegedly fraudulent statement here did not concern a public issue.

Because defendants failed to meet their burden to show the challenged causes of action arose from protected activity, "we affirm the trial court's ruling and need not address the merits of the case under the second prong of the statute." (*Castleman*, *supra*, 216 Cal.App.4th at p. 490.)

## DISPOSITION

The order is affirmed. Plaintiff shall recover its costs incurred on appeal.

IKOLA, J.

WE CONCUR:

MOORE, ACTING P. J.

THOMPSON, J.

15