Filed 6/30/25  Kaplan v. Kaplan CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JEFFREY A. KAPLAN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DONNA L. KAPLAN,<br><br>Defendant and Respondent. | B329507<br><br>(Los Angeles County Super. Ct. Nos. D231222, BC529916, BC532950) |

APPEAL from judgment of the Superior Court of Los Angeles County, Eli Chernow, Judge.  Affirmed.

Cooksey, Toolen, Gage, Duffy & Woog, Phil Woog, Matthew R. Pahl for Plaintiff and Appellant.

PB Law Group, Luan K. Phan, Jody Borrelli; Complex Appellate Litigation Group, Jens B. Koepke for Defendant and Respondent.

# INTRODUCTION

Jeff Kaplan and Donna Kaplan divorced in 1996. As part of the dissolution proceeding, the Kaplans' partial ownership of several mobile home parks was divided. According to the court order, Jeff[1] would continue to manage these assets, and he would act as Donna's fiduciary in doing so.

As part of an ongoing proceeding, Donna filed a cross-complaint against Jeff for breach of fiduciary duty, asserting that Jeff was subjecting Donna to substantial tax consequences through his interpretation of an agreement between Jeff and his business partner involving the mobile home parks. Jeff filed a special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16.[2] Jeff asserted that Donna's claim arose out of Jeff's filings in litigation regarding the business agreement, which was protected activity. Jeff's motion was denied, and Jeff appealed.

We affirm. Donna alleged that Jeff breached his fiduciary duties by pursuing a course of action that would subject Donna to serious tax consequences. Although Jeff asserted this position in litigation, breaching one's fiduciary duties is not protected activity. The legal filings were merely evidence supporting Donna's claim. Thus, Donna's claim did not arise from Jeff's actions in the litigation, and the motion was correctly denied.

---

[1] We follow the parties' lead and refer to them by their first names. No disrespect is intended.

[2] All undesignated section references are to the Code of Civil Procedure. "SLAPP" stands for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.)

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Divorce, FJRI, and buy-sell agreements**

Jeff and Donna were married from 1969 to 1996.  In 1999, the couple's distribution of community property was finalized in a stipulated "Further Judgment on Reserved Issues" (FJRI).  The couple maintained ownership interests in several mobile home parks in California, which the FJRI called "divided assets." Under the FJRI, Jeff would continue to manage the divided assets and act as Donna's fiduciary, as follows: "[Jeff] shall hold [Donna's] interests as a trustee in trust, and he shall have the duty to act with utmost good faith as trustee for [Donna's] assets in the highest sense possible as a fiduciary.  He shall act as a fiduciary with respect to [Donna's] interests with the same fiduciary duty to [Donna] that a husband would have to a wife . . . and that business partners have to each other."

The FJRI also stated that Jeff "shall have the unilateral right to manage and control" the divided assets, including "the sole right to make all day-to-day and all other management decisions."  Subject to Jeff's fiduciary duties to Donna, Jeff also had the "unilateral and sole right to make all decisions relating to any sale or financing" of the divided assets, and if Jeff "desires to sell or finance any of the Divided Assets, he must seek the prior consent of [Donna] if, but only if [*sic*], the transaction will generate a material adverse tax consequence" to Donna.

Jeff and Donna stipulated to have Judge Eli Chernow, retired, preside over any further disputes under section 638,[3] and

---

[3]    Under section 638, parties may consent to have any controversy heard by a referee in an ongoing litigation.  The decision of the referee will then "stand as the decision of the court."  (§ 644, subd. (a).)

they agreed that the superior court would retain jurisdiction to resolve any additional issues.

Jeff's business partner in the divided assets is Thomas T. Tatum.  In 1983, Jeff and Tatum entered into a "buy-sell agreement" intended to "protect the management and control of the Partnerships against intrusion by persons not active in the business of the Partnerships or not acceptable to the Partners as a co-manager and co-owner of the partnerships."  The 1983 buy-sell agreement stated that upon the death of Jeff or Tatum, "the surviving Partner shall purchase, and the estate of the deceased partner shall sell to the surviving Partner, all of the deceased partner's right, title and interest" in the assets.  The buy-sell agreement was amended several times. The 1998 version specifically acknowledged that a portion of Jeff's interests were held in trust for Donna.  Donna was not a party to the buy-sell agreement.

The FJRI acknowledges the buy-sell agreement, stating that upon Jeff's death his interests must be sold to Tatum, and upon Tatum's death his interests must be sold to Jeff.  Pursuant to the buy-sell agreement, Jeff maintained a life insurance policy on Tatum to facilitate a purchase in the event of Tatum's death, and the FJRI allowed Donna to "have the right to purchase one-half of Tatum's interest in the existing Divided Interests at the time of Tatum's death," as long as she contributed to the life insurance premiums.  The FJRI also stated that upon Donna's death, Jeff had the right to purchase her shares of the divided assets.

According to Donna, the buy-sell agreement and the FJRI say nothing "about forcing Donna to involuntarily sell her beneficial interests" in the divided assets.  She asserts that the

4

buy-sell agreement states that upon Jeff's death, Tatum must buy out all interests, which "would have the effect of involuntarily forcing Donna's beneficial stake into a sale while she was alive, causing . . . tens of millions in negative tax consequences to her." Donna notes that the FJRI requires Donna's consent to any sale or financing of the divided assets that would cause her negative tax consequences.

## B. Current litigation

### 1. *Background*

Donna filed two lawsuits in 2013 and 2014. The subject matter of these lawsuits is generally irrelevant to this appeal, so we describe them only briefly. First, in December 2013 Donna filed a complaint against the mobile home parks' management company (an entity controlled by Jeff), alleging breaches of fiduciary duty in the management of the parks. Second, in January 2014, Donna filed a complaint against Jeff for breach of fiduciary duty, fraud, and accounting. The superior court transferred the matters to Judge Chernow pursuant to the FJRI and section 638.

After two "trial" phases before Judge Chernow, a "phase 1" ruling was issued on March 26, 2019, and a tentative statement of decision for "phase 2" was issued on October 30, 2019. In the phase 1 ruling Judge Chernow found in favor of Jeff, and in the phase 2 tentative ruling he partially found in favor of Donna. There is no final ruling as to phase 2.

### 2. *Cross-complaint*

On May 11, 2023, in the matters that remained pending before Judge Chernow, Jeff filed a document titled "Statement of Claim for Declaratory Relief re Buy-Sell Agreement." Jeff stated that following the conclusion of the previous phases, new conflicts

had arisen that needed to be addressed by Judge Chernow. One issue was that Tatum and his children, acting on behalf of Tatum's deceased ex-wife, had challenged the buy-sell agreement in a lawsuit we will call the Tatum action. In the Tatum action, Jeff filed a cross-complaint for equitable indemnity and declaratory relief. Donna was named as a defendant in the Tatum action, and Jeff filed a motion for leave to intervene as trustee of Donna's interests.

In his request for declaratory relief before Judge Chernow, Jeff stated that he was seeking a declaration "that Donna Kaplan is bound by the terms of the Buy-Sell Agreement, which means that if Jeff Kaplan were to die before Tom Tatum, Donna Kaplan would be obligated to sell her financial interest in the Divided Asset parks to the Tatums, and conversely, if Mr. Tatum were to die first, Donna Kaplan and Jeff Kaplan are both obligated to purchase all of the interests of the Tatums."

Donna then filed a cross complaint for breach of fiduciary duty and removal of Jeff as her trustee. Donna alleged that she "is not bound by the Buy-Sell Agreement . . . . Ms. Kaplan never signed the agreement, or knew of it when it was negotiated. Nor did she ratify it." She further asserted, "Critically, Donna Kaplan would suffer severe financial losses running in the tens of millions of dollars, if the Buy-Sell Agreement were enforced against her, as Jeff Kaplan seeks by his Claim. Any effort by Jeff Kaplan to enforce the Buy-Sell Agreement against Donna therefore constitutes an independent, further breach of his fiduciary duties to her, given the extreme harm it would cause her." Donna alleged that Jeff had "charted a course and taken actions motivated by revenge and malice instead of abiding by the fiduciary duties he owes to Donna Kaplan. He has done so in

6

the actions he seeks to impose in relation to the Buy-Sell Agreement here, and in the prior-filed Tatum Action in which Donna Kaplan is also sued as a defendant."

Donna's cross-complaint noted that at "a hearing held in this matter on March 1, 2022, Judge Chernow raised *sua sponte* that it may well constitute a breach of fiduciary duty for Jeff Kaplan to seek to impose the Buy-Sell Agreement against Ms. Kaplan now, in light of the circumstances that exist today." Donna also alleged that she would face tax liabilities of over $51 million if the buy-sell agreement was imposed against her, as stated in a deposition by her tax expert. Donna further alleged that Tatum agreed that Donna was not subject to the buy-sell agreement, and therefore "[a]ll parties except Mr. Kaplan oppose the interpretation of the Buy-Sell Agreement that Mr. Kaplan seeks to impose by his Claim. There is no necessity or discernible justification for Jeff to continue to push for this." Donna alleged that "unless restrained, Jeff will continue to breach fiduciary duties he owes to Donna and interfere with Donna's right to the full and complete benefits of her ownership interests in the Divided Assets, thus engendering a multiplicity of judicial proceedings." Donna further alleged that "the animosity and breakdown in communication between Donna and Jeff render it impossible for him to exercise any discretionary powers fairly and act impartially toward her." She therefore sought Jeff's removal as trustee of the divided assets.

3.     *Special motion to strike*

Jeff filed an anti-SLAPP special motion to strike Donna's cross-complaint under section 425.16. Under that statute, "[a] cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States

7

Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788, citing § 425.16, subd. (b)(1).) "Resolution of an anti-SLAPP motion involves two steps. First, the [moving party] must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the [moving party] makes the required showing, the burden shifts to the [opposing party] to demonstrate the merit of the claim by establishing a probability of success." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) Protected activity includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1).)

Jeff argued that Donna's cross-complaint arose from protected activity in that the cross-complaint "alleges two 'acts' by Jeff that [constitute a] breach of fiduciary duty: First, Jeff has filed [his declaratory relief claim] seeking a declaration that Donna's interests are subject to the Buy-Sell Agreement; and second, Jeff has asserted in the Tatum Action that the Buy-Sell Agreement is enforceable."[4] He asserted that his filing of the declaratory relief claim "was by definition an act in furtherance of the right to petition or free speech," because it "quite literally constitutes direct petitioning activity to the court for a ruling in the ongoing action." He asserted that his declaratory relief claim "concerns whether Donna's financial interests are bound by the

---

[4]     Jeff also filed a request for judicial notice that included documents from the Tatum action, deposition transcripts, and documents filed in the dissolution proceeding.

8

terms of the Buy-Sell Agreement, a simple 'yes-or-no' proposition that should be resolved under the dispute resolution terms of the FJRI. Donna has pounced on the opportunity to make another misguided stab at punitive damages by reframing the [declaratory relief claim] and Jeff's successful efforts to defend the enforceability of the Buy-Sell Agreement from Tatum as some type of 'breach of fiduciary duty.'" Jeff continued, "With regard to the Tatum Action, Jeff's statements, arguments, and pleadings in furtherance of defending the enforceability of the Buy-Sell Agreement likewise arose from protected petitioning activity." He argued, "Statements made with a good faith belief in a legally viable claim will be protected by both the litigation privilege and the anti-SLAPP statute."

Jeff further asserted that Donna could not meet the second prong of the anti-SLAPP analysis because she could not demonstrate a probability of prevailing on the merits. He asserted that Donna could not show that Jeff's actions constituted a breach of fiduciary duty. Jeff further asserted that Donna's speculation about the tax implications of a possible future scenario did not constitute damages. Jeff further discussed several defenses to Donna's claims, including laches, ratification, and litigation privilege.

4. *Opposition*

In her opposition, Donna asserted that her cross-complaint was not based on protected activity. She argued, "The activity giving rise to Donna's harm is Jeff's breach of his fiduciary duties by formulating the plan whereby he asserts that Donna is bound by the 1998 Buy-Sell Agreement, and seeking to impose that contract on her though its terms are extremely detrimental." She asserted that although Jeff's litigation activities were evidence of

9

his breach of fiduciary duties, Donna's claim did not arise from that activity. Donna also argued that breaching one's fiduciary duties is not protected activity under section 425.16. She further contended that she could meet her burden on the second step of the analysis, because she was likely to prevail on the merits of her claims.

Jeff filed a reply in support of his motion.

5. *Ruling*

After a hearing, Judge Chernow issued a short written decision denying Jeff's motion "for the reasons stated in the opposition." The court further stated that although Donna's cross-complaint was "not perfect, the clear fair reading of" her cross-complaint demonstrated that the "issue is not the form of Mr. Jeffrey Kaplan['s] pleading, but the substance behind it."

Jeff timely appealed.

## DISCUSSION

Jeff contends Judge Chernow erred in denying his special motion to strike at the first stage of the anti-SLAPP analysis. He argues that Donna's claims did arise out of protected activity, and therefore we should consider the second step of the analysis, which he contends we should also resolve in his favor. We find no error.

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept [the opposing party's] submissions as true and consider only whether any contrary

10

evidence from [the moving party] establishes its entitlement to prevail as a matter of law." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) The appellant bears the burden of affirmatively demonstrating error. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

"The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the [cross-complainant] has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the [cross-complainant's] evidence as true, and evaluates the [cross-]defendant's showing only to determine if it defeats the [cross-complainant's] claim as a matter of law. [Citation.] '[C]laims with the requisite minimal merit may proceed.'" (*Baral, supra*, 1 Cal.5th at pp. 384-385.)

In the first step under the anti-SLAPP analysis the court determines whether the claims arise from protected activity. (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) As noted above, protected activity includes "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1).) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.) "[A] claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060.)

Here, Donna alleged two causes of action: breach of fiduciary duty, and "removal of Jeffrey Kaplan as trustee." The second claim is more a remedy than a cause of action. Thus, we

11

examine the elements of Donna's breach of fiduciary duty cause of action. (See *Bonni, supra,* 11 Cal.5th at p. 1009 ["At th[e] first step [in the anti-SLAPP analysis], courts are to 'consider the elements of the challenged claim and what actions by the [cross-]defendant supply those elements and consequently form the basis for liability'"].)

"'The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach.'" (*O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1215.) The parties agree that Jeff had a fiduciary duty to Donna under the FJRI. The relevant question, therefore, is whether Jeff's alleged breaches of his fiduciary duty constituted protected activity.

Donna alleged that Jeff breached his duties under the FJRI by taking the position that Donna was subject to the buy-sell agreement. Donna alleged that this position was detrimental to her interests, because it would subject her to serious tax consequences she would not otherwise be subject to. Jeff asserts that there are only two "acts" alleged in the cross-complaint, and they both constitute protected activity: Jeff's filing of the declaratory relief claim, and Jeff's motion in the Tatum action seeking leave to intervene as Donna's trustee. However, Donna cited these two acts as *evidence* that Jeff, as Donna's fiduciary, was failing to adequately protect Donna's interests under the FJRI. Donna's cross-complaint did not arise from those two acts.

The reasoning of *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864 (*Gaynor*) demonstrates this point. There, a man died and left a trust for his children and grandchildren. When some of the beneficiaries sued the trustees, the trustees filed a special motion

to strike, asserting that the gravamen of the beneficiaries' petition arose from the trustees' protected activity in probate litigation. (*Gaynor, supra*, 19 Cal.App.5th at p. 875.) For example, the beneficiaries asserted that the trustees "violated their statutory duties of loyalty and fair treatment by 'wasting Trust assets' on legal fees and costs to pursue" certain litigation actions, and "wrongfully forced the . . . beneficiaries to spend funds to oppose/defend these petitions and activities." (*Id.* at p. 879.)

The Court of Appeal held that the beneficiaries' claims did not arise from protected activity. "We agree that filing petitions, motions, and briefs in court (and/or assisting in the filing) are protected petitioning activities under the anti-SLAPP statute. [Citations.] But the . . . beneficiaries' breach of fiduciary claim was not *based* on these protected activities." (*Gaynor, supra*, 19 Cal.App.5th at p. 880.) Rather, the beneficiaries alleged that the trustees had a "plan to change the trustee succession rules to allow the [trustees] to operate and control the Trust to advantage a select portion of the beneficiaries. Thus, the activity giving rise to the . . . beneficiaries' alleged harm was the breach of loyalty in formulating and pursuing this plan and the improper use of Trust assets to wrongfully benefit [the trustees]. Although the alleged breach of loyalty may have been carried out by the filing of probate petitions, it was not the petitioning activity itself that is the basis for the breach of fiduciary claim." (*Ibid.*)

Similarly, in *Starr v. Ashbrook* (2023) 87 Cal.App.5th 999 (*Starr*), the trustee of a father's trust authorized trust funds to be used for a lawsuit alleging elder abuse against the father's sons. (*Starr, supra*, at pp. 1010-1011.) A guardian ad litem in the case found that the father's cognitive issues left him susceptible to

undue influence, and that the father had no conflict with his children.  (*Id*. at p. 1011.)  One son, Jonathan, then filed a petition against the trustee, Ashbrook, for breach of trust.  Ashbrook filed a special motion to strike, alleging that Jonathan was suing him "for bringing and funding litigation, which are protected activities under section 425.16(e)(1) and (2)."  (*Id*. at pp. 1012-1013.)

Relying in part on *Gaynor*, the trial court denied the motion at the first stage of the anti-SLAPP analysis.  (*Starr, supra*, 87 Cal.App.5th at p. 1013.)  The Court of Appeal affirmed.  It noted that "[a]t first glance, [Ashbrook's] actions appear to constitute the constitutionally protected activities of filing and pursuing [litigation] and using trust assets to fund the elder abuse lawsuit."  (*Id*. at p. 1020.)  However, "[c]loser analysis" revealed that "the basis of liability is not the filing and funding of litigation, but is, as Jonathan contends, the waste and misuse of trust money."  (*Ibid*.)  The court continued, "The core injury-producing conduct asserted by Jonathan . . . is the waste and misuse of trust assets. Jonathan does not allege that [the litigation] itself produced the injury or gave rise to liability.  The injury allegedly suffered is the loss of trust assets and the reduction of the trust corpus, and that injury was produced by the waste and misuse of those assets by Ashbrook . . . . The [litigation] merely serve[s] as evidentiary support for Jonathan's claim."  (*Ibid*.)

The reasoning of *Gaynor* and *Starr* applies here.  The purported "protected activity"—Jeff's filing of documents in the Tatum action and this action—was not the basis of Donna's claim.  Rather, this was evidence supporting Donna's claim that Jeff engaged in a course of conduct that undermined Donna's

interests and therefore violated Jeff's fiduciary duties to her. Had Jeff, as Donna's trustee, *privately* asserted that Donna was bound by the buy-sell agreement and acted upon that determination—for example, in private negotiations with Tatum and without any court involvement—Donna's breach of fiduciary duty cause of action would remain the same, despite the lack of any protected activity.[5] As the court stated in *Starr*, "Misconduct in the administration of a trust and preservation of trust assets is not action 'in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution.' (§ 425.16(b)(1).)" (*Starr, supra,* 87 Cal.App.5th at p. 1021; see also *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 730 [breach of fiduciary duty is not subject to the anti-SLAPP statute when the protected activity is "merely incidental" to the claim]; *Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1019-1020 [alleged breach of fiduciary duty by diverting money did not constitute protected activity, even if the diverted funds were used to further protected activity].)

It follows that allegations regarding a breach of fiduciary duty are not subject to a motion to strike simply because the allegedly wrongful "action or decision . . . was thereafter communicated by means of speech or petitioning activity." (*Park, supra*, 2 Cal.5th at p. 1060.) Indeed, the Supreme Court warned

---

[5]    Jeff also acknowledged in a declaration filed below, for example, that "[o]ver the years, Donna has . . . contacted [him] on several occasions to try [to] change the terms of the life insurance" policy she holds "in order to deal with potential tax consequences given the application of the Buy-Sell Agreement." Such private conversations are not "in connection with a public issue." (§ 425.16, subd. (b)(1).)

in *Park* that "[f]ailing to distinguish between . . . challenged decisions and the speech that leads to them or thereafter expresses them 'would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power.'" (*Id.* at p. 1067.) Thus, courts must be mindful of the "distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Id.* at p. 1064.) Here, although Jeff's petitioning activity may constitute evidence that he was failing to protect Donna's interests, the petitioning activity itself is not the alleged breach.

Jeff compares this case to *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871 (*Wilson*), in which the Supreme Court stated that in the first step of the anti-SLAPP analysis, courts examine "the conduct of defendants without relying on whatever improper motive the plaintiff alleged." (*Wilson*, *supra*, 7 Cal.5th at p. 888.) Jeff asserts that here, it was "error to consider arguments concerning Jeff's motives," and instead the focus should have been only on Jeff's actions.

The comparison to *Wilson* is not apt. In *Wilson*, "a journalist allege[d] that his employer denied him promotions, gave him unfavorable assignments, and ultimately fired him for unlawful discriminatory and retaliatory reasons." (*Wilson, supra*, 7 Cal.5th at p. 881.) Addressing the first step of the anti-SLAPP analysis in relation to employer CNN's motion, the Supreme Court noted that "all of Wilson's employment-related claims depend on two kinds of allegations: (1) that CNN subjected Wilson to an adverse employment action or actions, and (2) that it took these adverse actions for discriminatory or retaliatory reasons." (*Id.* at p. 885.) The court stated, "It is ordinarily

16

perfectly permissible for an employer to decide not to hire, not to promote, or to fire an employee.  The employer may not, however, act based on 'the race, religious creed, color, national origin,' or other protected characteristic of the employee. . . ."  (*Id.* at p. 886.) The court held that a plaintiff may not defeat an anti-SLAPP motion by simply alleging that "ordinarily perfectly permissible" actions were based on improper motives.  Rather, "[i]f the acts alleged in support of the plaintiff's claim are of the sort protected by the anti-SLAPP statute, then anti-SLAPP protections apply."  (*Id.* at p. 887.)

Here, by contrast, motive is not an element of Donna's fiduciary duty cause of action.  (See, e.g., *Manlin v. Milner, supra*, 82 Cal.App.5th at p. 1020 [the reason for a breach of fiduciary duty is not an element of such a claim].) It is not "ordinarily perfectly permissible" for a trustee to undermine a beneficiary's interests, as long as the trustee maintains a neutral motive. Thus, the reasons for focusing on actions rather than motivations in *Wilson* do not apply in the context of this case.

We therefore find no error in Judge Chernow's conclusion that Jeff failed to demonstrate that Donna's claims arose out of protected activity.  As such, the motion was appropriately denied at the first step, and we need not proceed to the second step of the anti-SLAPP analysis.

## DISPOSITION

The ruling on the special motion to strike is affirmed. Donna Kaplan is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

17

We concur:


MORI, J.


UHRIG GARCIA, J.*

<hr />

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.