Filed 11/28/23  BMR Summers Ridge v. H.G. Fenton Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| BMR-SUMMERS RIDGE LP,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>H.G. FENTON COMPANY et al.,<br><br>Defendants and Appellants. | D081115<br><br><br>(Super. Ct. No. 37-2022-00005238-CU-BT-CTL) |

APPEALS from an order of the Superior Court of San Diego County, Katherine Bacal, Judge.  Affirmed.

Duane Morris, Colin L. Pearce, Jolie-Anne S. Ansley, and Ashley Barton for Appellants H.G. Fenton Company, Jeff Diltz, and Connie Powell.

Pettit Kohn Ingrassia Lutz and Dolin, Ryan H. Nell, and Christine Y. Dixon for Appellant Fenton Technology Park Property Owners Association.

Latham & Watkins, John T. Ryan, Nicole C. Valco, Grant E. Strother, Melissa Arbus Sherry, Anna M. Rathbun, and Christina R. Gay for Plaintiff and Respondent.

H.G. Fenton Company (Fenton), Fenton Technology Park Property Owners Association (Association), Jeff Diltz, and Connie Powell (collectively,

defendants) appeal the trial court's order denying their special motions to strike BMR-Summers Ridge LP's (BMR) complaint as a strategic lawsuit against public participation (SLAPP). Defendants contend that while the court correctly found BMR's claims arise from protected activity, the court erred in finding that BMR showed a probability of succeeding on its claims. BMR argues that the court reached the right result because its claims have at least minimal merit. But BMR also contends that the court should have denied the motions to strike on the ground that BMR's claims do not arise from activity protected by the anti-SLAPP statute. (See Code Civ. Proc.,[1] § 425.16.)

We conclude that defendants failed to meet their burden of showing BMR's claims arise from protected activity under section 425.16, subdivisions (e)(1) through (e)(4), because the alleged activity: (1) did not involve an "official proceeding"; (2) did not occur in a "public forum"; and (3) did not contribute to any public discussion about an issue of public interest. Having concluded that the motions to strike fall short at the first step of the anti-SLAPP analysis, we need not reach the question of whether BMR met its second-step burden of establishing a probability of success on the merits of its claims. (§ 425.16, subd. (b)(1).) Accordingly, we affirm the denial of defendants' motions to strike.

FACTUAL AND PROCEDURAL BACKGROUND

Fenton, BMR, and Alexandria Real Estate Equities (ARE) are competitors in the San Diego commercial real estate market. Each business owns lots in Fenton Technology Park (Park), a large industrial area located between two freeways in the Sorrento Mesa area of San Diego. The Park is

---

1    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

governed by covenants, conditions, and restrictions (CCRs) which establish the Association, a nonprofit mutual benefit corporation, as a managing body. The CCRs provide that the Association's members consist of the Park's parcel owners.

The CCRs also state that owners may use their land for "commercial or industrial purposes" including warehousing. Before developing or constructing improvements on their land, however, owners must submit their plans to the Association for approval. The Association's board, comprised of directors from BMR, Fenton, and ARE, has the right to disapprove an application if it is "not in accordance" with the CCRs, is incomplete, or is not compliant with applicable governmental approvals and regulations. The CCRs provide that the Association "shall not unreasonably withhold its approval[.]"

In 2021, BMR agreed to sell two of its lots to Amazon for an alleged profit of over $150 million for BMR. Amazon intended to build a facility on those lots for storing merchandise before delivery to final destinations in San Diego County. The agreement was contingent on receiving governmental approvals, as well as Association approval, within a specified time period. BMR obtained preliminary confirmation from the City of San Diego (City) that Amazon's anticipated use was permissible under applicable permit and zoning requirements, and that the anticipated traffic was allowable.

BMR then submitted an application to a committee, appointed by the Association, which considered the application during a video meeting. The meeting was only accessible to the Park's property manager and representatives from ARE, BMR, and Fenton. BMR alleges that the property manager instructed BMR's representative to recuse herself from the meeting before the Association deliberated and voted on the application. The

3

Association then denied the application, stating that Amazon's proposed use was "incompatible either with the character of [the Park] as a first class integrated mixed use business center or with the purpose and general plan and intent of the [CCRs]." Although BMR submitted additional information and requested reconsideration, the Association did not change its decision, and Amazon withdrew from its agreement with BMR shortly thereafter.

BMR filed suit in February 2022 against Fenton and the Association, as well as Diltz (Fenton's committee representative who voted on the application) and Powell (Fenton's board representative). BMR's complaint, as amended, asserts causes of action (COA) based on: breach of the CCRs (first and second COAs); declaratory relief under the Nonprofit Mutual Benefit Corporation Law (Corp. Code, § 7110, et seq., third COA); breach of fiduciary duties (fourth COA), tortious interference with BMR's relationship with Amazon (fifth, sixth, and seventh COAs), breach of the implied duty of good faith and fair dealing (eighth COA), the Cartwright Act[2] (ninth COA), unfair competition (tenth COA), and a request for other declaratory relief relating to the denial of BMR's application (eleventh COA).

Defendants filed anti-SLAPP motions to strike, arguing that the allegations in BMR's amended complaint involve all four categories of protected activity as described in section 425.16, subdivision (e). (See § 425.16, subd. (e)(1)–(4).) Specifically, defendants argued that BMR was suing them for their actions in Association meetings, which constituted "official proceedings," and that those actions were taken in a "public forum" involving high-profile issues of "public interest." Defendants also contended

_____

2    The Cartwright Act is California's antitrust statute. (Bus. & Prof. Code, § 16700 et seq.)

4

that their protected activities gave rise to BMR's claims, and that BMR could not demonstrate a probability of prevailing on the merits.

After considering the parties' briefs and holding a hearing, the trial court granted in part and denied in part defendants' anti-SLAPP motions. The court first found that all of BMR's claims arose out of the Association's vote to deny the application, which constituted protected activity. The court then concluded that BMR showed a probability of prevailing on each of its claims, except as to Diltz and Powell individually for tortious interference and Cartwright Act violations. The court therefore dismissed only those specific claims against Diltz and Powell (fifth, sixth, seventh, and ninth COAs), but otherwise denied defendants' motions to strike the remaining COAs.[3] Defendants timely appealed.

## DISCUSSION

Defendants ask us to reverse the court's order denying their anti-SLAPP motions, arguing that while the court correctly found BMR's claims arise from protected activity, the court erred in finding that BMR showed a probability of succeeding on its claims. We conclude that the trial court was correct to deny defendants' motions, but on the basis that defendants failed to meet their burden of showing BMR's claims arise from protected activity.

*A. Governing Law*

The anti-SLAPP statute provides in relevant part that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike [anti-SLAPP motion], unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd.

---

[3] The dismissed causes of action are not at issue on appeal.

(b)(1).) Ruling on an anti-SLAPP motion typically involves two steps. First, the defendant moving to strike a cause of action must show the act underlying the claim falls within one of the four categories of protected activity listed in section 425.16, subdivision (e). (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66 ["only means" by which a moving defendant can satisfy section 425.16 requirements is "to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) . . ."]; *Bowen v. Lin* (2022) 80 Cal.App.5th 155, 160 (*Bowen*).)

The first two categories in subdivision (e) pertain to statements or writings made before, or in connection with, a "legislative, executive or judicial body, or any other *official proceeding* . . . ." (§ 425.16, subd. (e)(1), (2), italics added.) The third category involves statements or writings made in a public place or forum, and the fourth category includes other conduct in furtherance of free speech or the right to petition. (*Id.*, subd. (e)(3), (4).) The latter two categories both require a specific showing that the alleged action concerns a matter of public interest, while the first two categories require that the alleged action involve an official proceeding. (*See Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117–1118.)

If the defendant makes a sufficient showing under the first prong of the anti-SLAPP analysis, the burden shifts to the plaintiff to show the targeted causes of action are legally sufficient and supported by evidence that, if credited, would sustain a judgment for the plaintiff. (*Baral, supra*, 1 Cal.5th at pp. 384, 396; *Bowen, supra*, 80 Cal.App.5th at p. 160.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a

6

SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*); accord, *Bowen*, at p. 160.) The trial court's decision on both prongs is subject to de novo review on appeal. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250 (*Geiser*); *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 796; *Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1018.)

    *B. Analysis*

        1. <u>Official Proceeding</u>

BMR contends that defendants have waived any argument on appeal as to the first category of protected speech encompassing statements made in an "official proceeding" under section 425.16, subdivision (e)(1). While it is true that defendants have not put forth arguments in support of subdivision (e)(1)'s application here, we conclude that even if they had, the argument would fail for the same reason their argument under subdivision (e)(2) falls short. We therefore discuss the applicability of these subdivisions together.

Section 426.16, subdivision (e)(1) applies to "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other *official proceeding* authorized by law." (§ 425.16, subd. (e)(1), italics added.) Subdivision (e)(2) applies to "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other *official proceeding* authorized by law[.]" (§ 425.16, subd. (e)(2), italics added.)

Contrary to what defendants argue, we conclude that the Association meeting was not an "official proceeding" for anti-SLAPP purposes under either subdivision (e)(1) or (e)(2). Courts have found that an action involved an official proceeding under section 425.16 where, for example, a hospital was required by statute to have a peer review process as part of a

7

"comprehensive" regulatory scheme governing the "overall process for the licensure of California physicians." (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 199 (*Kibler*).) In *Kibler*, the Supreme Court found notable that "decisions resulting from peer review proceedings are subject to judicial review by administrative mandate. [Citation.]" (*Id.* at p. 200.)

Similarly, in *Fontani v. Wells Fargo Investments, LLC* (2005) 129 Cal.App.4th 719 (*Fontani*), a plaintiff sued his former employer based on statements the employer made to the National Association of Securities Dealers (NASD) about the reasons for his termination. (*Id.* at p. 725.) The Court of Appeal concluded that the NASD proceeding was an "official proceeding" for purposes of section 425.16 because "the NASD exercises governmental power" as " 'the primary regulatory body for the broker-dealer industry' and thus performs uniquely regulatory functions typically performed by a governmental regulatory agency. [Citations.]" (*Id.* at p. 729.)

Here, unlike the governing bodies in *Kibler* and *Fontani*, the Association does not function within a larger regulatory scheme governing a profession or industry at large, nor are its decisions reviewable by administrative mandate. (See *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 732 (*Talega*) [distinguishing homeowners association (HOA) on similar grounds].) According to the CCRs, the Association consists only of a few parcel owners in the Park, and its responsibilities are narrowly limited to internal matters like maintaining common areas, levying assessments from owners, and enforcing internal regulations. Although courts have recognized similarities between an HOA and a local government in finding that an activity involved an official proceeding, the Association has no strong connection to governmental

8

proceedings and "is not performing or assisting in the performance of the *actual* government's duties, as was the case in *Kibler* and *Fontani*." (*Talega*, at p. 732.)

*Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500 (*Donovan*) leads us to the same conclusion. In *Donovan*, a former board member of a nonprofit charitable organization sued the organization and current board members for wrongful removal. (*Id.* at pp. 1502–1503.) The defendants contended the board meeting during which the plaintiff was removed was an official proceeding because "board of directors meetings and majority voting are authorized under the Corporations Code[.]" (*Id.* at p. 1508.) The Court of Appeal in *Donovan* disagreed, noting that while board meetings are authorized by statute, "the actual procedures are left to the private organizations" and the board's decisions are still not reviewable by administrative mandate. (*Ibid.*; cf. *Olaes v. Nationwide Mutual Ins. Co.* (2006) 135 Cal.App.4th 1501, 1508 [private company's sexual harassment grievance protocol not an official proceeding].)

Defendants rely on *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 (*Damon*) to argue that the Association functions like "a little democratic subsociety" which is, in effect, "a quasi-government entity paralleling in almost every case the powers, duties, and responsibilities of a municipal government." (*Damon*, at p. 475.) But in *Damon*, our court decided the alleged activity fell within section 425.16, subdivision (e)(3) on "public forum" and "public interest" grounds, expressly noting that doing so "render[ed] it unnecessary for [our court] to consider the issue of whether the alleged defamatory statements come under section 425.16, subdivision (e)(1) or (2)." (*Damon*, at p. 474, fn. 3.)

9

As the *Talega* court noted, "multiple cases have addressed anti-SLAPP motions arising from statements at [HOA] board meetings," and those cases have generally "analyzed the case under the rubric of subdivision (e)(3) or (4)." (*Talega, supra*, 225 Cal.App.4th at p. 732, citing *Silk v. Feldman* (2012) 208 Cal.App.4th 547, 553–554 [statements disseminated to numerous HOA members fell within subdivision (e)(3) or (e)(4)]; *Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1087–1088 [HOA meeting accessible to hundreds of homeowners constituted a "public forum" under subdivision (e)(3)]; *Damon, supra*, 85 Cal.App.4th at p. 474; see also *Lee v. Silveira* (2016) 6 Cal.App.5th 527, 539–540 (*Silveira*) [noting HOA's "quasi-government" characteristics in the context of subdivision (e)(3)].) Our conclusion that the Association meeting was not an official proceeding falling within section 425.16, subdivisions (e)(1) and (e)(2), is therefore consistent with the approach taken in those cases.

Moreover, as noted in *Donovan*, a small nonprofit organization like the Association is not a quasi-governmental entity in the way that an HOA for a 3,000-resident community might be, as was the case in *Damon*. (*Donovan, supra*, 204 Cal.App.4th at p. 1507, fn. 3; *Damon, supra*, 85 Cal.App.4th at p. 476.) The association in *Damon* had an annual budget exceeding $3 million, employed approximately 60 people, and made decisions impacting over 1,600 homes, a golf course, and other recreational facilities. (*Damon*, at pp. 471–472.) In contrast, the record here shows that the four-member Association's decision-making is largely limited to matters within the Park, impacting only the few private businesses that own lots there. The Association's smaller size and scope make its proceedings less "closely linked to any governmental, administrative, or judicial proceedings or regulation[.]" (*Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1521.)

10

Accordingly, we conclude BMR's claims do not concern a statement made before or in connection with an "official proceeding" under section 425.16, subdivision (e)(1) or (e)(2).

2. Public Forum

We turn next to whether BMR's allegations fit into the third category of protected activity under section 425.16, subdivision (e)(3), which requires that the statements at issue be "made in a place open to the public or a public forum in connection with an issue of public interest[.]" We conclude that the alleged acts do not fall in this category because the Association's denial of BMR's application did not occur in a public place or forum.

A public forum is typically defined as a place that is open and accessible to the general public " ' "for purposes of assembly, communicating thoughts between citizens, and discussing public questions." ' [Citations.] Means of communication where access is selective . . . are not public forums. [Citation.]" (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1130; see also *Clark v. Burleigh* (1992) 4 Cal.4th 474, 482.) Here, to vote on the application, the Association convened a private meeting with four participants who could only access the meeting using a link sent to each of them. Access to the meeting was clearly selective, and there is no evidence in the record that the meeting was open to anyone outside of those four members.

Defendants rely on *Damon* again because in that case, our court concluded that an HOA meeting constituted a public forum under section 425.16, subdivision (e)(3). *Damon*, however, is distinguishable because it involved a residential HOA, and the HOA board meeting in that case was televised, accessible to thousands of residents, and open to all interested parties. (*Damon, supra,* 85 Cal.App.4th at p. 475.) The HOA's board "served a function similar to that of a governmental body"; its powers "extend[ed] to

11

life within 'the confines of the home itself' "; and it "played a critical role in making and enforcing rules affecting the daily lives of [the] residents." (*Ibid*.) The court noted that "[b]ecause of a homeowners association board's broad powers and the number of individuals potentially affected by a board's actions, the Legislature has mandated that boards hold open meetings and allow the members to speak publicly at the meetings. [Citations.] These provisions parallel California's open meeting laws regulating government officials, agencies and boards. [Citations.]" (*Ibid*.)

This stands in stark contrast to the private meeting of the four members of a purely commercial common interest development at issue here. The board of a commercial common interest development does not govern the life of a residential community in a manner similar to a municipality or other governmental body. Instead, it functions more like the board of a private corporation to serve the owners' commercial interests. Moreover, Fenton points to no laws requiring that purely commercial common interest developments comply with open meeting laws in the same way that a residential HOA must. (Compare Civ. Code, § 6500 et seq. [Commercial and Industrial Common Interest Development Act] with Civ. Code, § 4000 et seq. [Davis-Stirling Act governing residential and mixed-use common interest developments].) Thus, *Damon* does not support Fenton's public-forum argument.

Defendants also rely on *Ruiz v. Harbor View Community Association* (2005) 134 Cal.App.4th 1456, but that case was decided based on section 425.16, subdivision (e)(4), and did not address the "public forum" requirement in subdivision (e)(3). (*Ruiz*, at pp. 1461, 1469, fn. 5.)

12

Accordingly, because the record shows the Association meeting was not a public forum, we conclude that actions or statements made at the meeting did not constitute protected activity under section 425.16, subdivision (e)(3).

### 3. Public Discussion

Next, we consider whether the acts alleged in BMR's complaint fall within the fourth "catchall" category of protected activity under section 425.16, subdivision (e)(4). Subdivision (e)(4) includes "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) Our Supreme Court has held that this category calls for a two-part analysis. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*); *Geiser*, *supra*, 13 Cal.5th at p. 1243.) First, "we ask what public issue or issues the challenged activity implicates, and second, we ask whether the challenged activity contributes to public discussion of any such issue. [Citation.]" (*Geiser*, at p. 1243.) As the Court explained in *FilmOn*, the second step, not the first, "usually plays the more prominent role in screening anti-SLAPP motions because caselaw 'demonstrate[s] that virtually always, defendants succeed in drawing a line — however tenuous — connecting their speech to an abstract issue of public interest.' [Citation.]" (*Id.* at p. 1250.) "And where the first step is satisfied, it performs an important function in the inquiry: It operates as a lens that focuses the analysis at the second step." (*Ibid.*)

The anti-SLAPP statute does not define "public issue" or "issue of public interest," but the Supreme Court has stated that the first step in the subdivision (e)(4) analysis is satisfied "so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute." (*Geiser*,

13

*supra*, 13 Cal.5th at p. 1253; § 425.16, subd. (e)(4).) This broad definition of "public interest" arguably encompasses a decision about whether a private association should allow the development of a large-scale Amazon distribution center, even though defendants provide little evidence regarding its implications for communities *beyond* the Park. Defendants rely primarily on instances of public opposition to Amazon facilities in *other* locations to argue that the same community opposition could arise here.

We are mindful that "[c]ourts have generally rejected attempts to abstractly generalize an issue in order to bring it within the scope of the anti-SLAPP statute." (*Talega*, *supra*, 225 Cal.App.4th at p. 733.) Moreover, the context of the activity here, which the Supreme Court noted is relevant in this first-step analysis, further separates this situation from the other instances of public opposition referenced by defendants. (See *Geiser*, *supra*, 13 Cal.5th at p. 1252 [context matters in both steps of the "catchall" inquiry].) For example, while one of the other two Amazon facilities was near several residential communities with limited barriers to mitigate light and sound pollution, the Park is in a large industrial area between two freeways. The second Amazon facility referred to by defendants was planned for a former church site and became the subject of a lawsuit brought by unions, environmental advocates, and nearby residents. In contrast, there is little evidence indicating that similar suits would necessarily arise in this context, given the industrial nature of the area and the fact that shipping and distribution companies already operate in the area.

There are thus fewer "indicators that the [activity] implicated public issues" here (*Geiser*, *supra*, 13 Cal.5th at p. 1251), especially because the Association's stated reasons for denying the application were tied to the "character" of the Park itself, not the community surrounding the Park or the

14

public at large.  (See *Donovan, supra*, 204 Cal.App.4th at pp. 1506–1509 [disputes among foundation directors over corporate governance not protected activity: "[T]he fact that the Foundation is one of the largest charitable organizations in Southern California, subject to public oversight by the Attorney General, and that it donates a substantial amount of money every year to persons and entities that affect millions of Southern Californians . . . [does not] transform a private disagreement among directors of the Foundation into a public issue"].)  The dispute's private nature is further evidenced in a March 2022 letter Fenton addressed to the City, which focused almost exclusively on the development's potential impact on the Park's "business environment" and on "owners' expectations," with no real discussion of how the facility could impact the community outside of the Park.

Given the Supreme Court's broad definition of "public interest," however, we will assume that the development of an Amazon distribution center at this location does implicate an issue of public interest under the first *FilmOn* step.  We nevertheless conclude that the conduct challenged in this lawsuit does not satisfy the second *FilmOn* step under section 425.16, subdivision (e)(4), because defendants have failed to show that it contributed to any discernible "public discussion" of the issue.  (See *Geiser, supra*, 13 Cal.5th at p. 1243.)  Defendants point to no evidence that there was public discourse concerning BMR's application, or this particular proposed facility, when the Association made its decision.  Unlike in the cases defendants cite, there is no evidence that BMR's application had generated any public meetings, petitions, letters, or other engagement from the community.  (See *Golden Eagle Land Inv., L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 417 [record included petitions signed by 130 residents, letters from

15

neighboring HOAs opposing the development at issue, and declaration that project generated significant public interest, "including at public meetings"]; *Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1233–1234 [record showed project was "publicly noticed and agendized on four separate occasions"; developer "conducted numerous public forums with government agencies, local community groups, and individuals, as well as organized meetings with various environmental and habitat organizations"].)

Defendants also make no argument as to how the Association's decision would have *contributed* to any public discourse, even if such discourse existed. It is not sufficient that the speech merely " 'refer to a subject of widespread public interest; the statement must in some manner itself *contribute* to the public debate.' " (*FilmOn, supra*, 7 Cal.5th at p. 150, italics added, citing *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898.) In contrast to the facts in *Geiser*, the evidence here does not show the Association's vote helped "draw attention" to any implicated public issues, such as the facility's potential environmental or traffic impacts on communities outside of the Park. (See *Geiser, supra*, 13 Cal.5th at p. 1255 [protest "served to draw attention to the alleged unfairness" of business practices].) Nor does the evidence show the denial had any "functional relationship" with a public issue extending beyond the Association's private dispute with BMR, because as noted, even the reasons cited for the denial were limited to the facility's impact on the Park itself. (See *id.* at p. 1246.)

Accordingly, we conclude that the Association's alleged actions did not contribute to public discussion of a public issue, and thus do not constitute protected activity under section 425.16, subdivision (e)(4).

16

Our conclusion that BMR's claims did not involve any categories of protected activity means its claims were not subject to being stricken under the statute.  (*Navellier*, *supra*, 29 Cal.4th at p. 89; *Verceles v. Los Angeles Unified School Dist.* (2021) 63 Cal.App.5th 776, 784.)  We thus need not, and do not, consider whether BMR established a probability of prevailing on its claims.[4]  (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80–81; *Turner v. Vista Pointe Ridge Homeowners Assn.* (2009) 180 Cal.App.4th 676, 688.)

DISPOSITION

The order denying the anti-SLAPP motions is affirmed.  BMR shall recover its costs on appeal.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P.J.

DO, J.

---

[4]    We also do not decide whether BMR's claims could be characterized as "arising from" any theoretical protected activity, or whether such activity was " 'merely incidental' to the gravamen" of BMR's complaint.  (*Silveira*, *supra*, 6 Cal.App.5th at p. 543, quoting *Talega*, *supra*, 225 Cal.App.4th at p. 730.)

17