Filed 4/26/22 Mondragon v. Kelliher CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ELENA MONDRAGON, | B311995 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 18SMCV00467 |
| v. | |
| NEIL KELLIHER et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark A. Young, Judge. Reversed.

The Appellate Law Firm, Berangere Allen-Blaine and Aaron Myers for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Lyne A. Richardson and Brittney L. Turner for Defendants and Respondents.

## INTRODUCTION

The Marina City Club is a mixed-use real estate development containing both condominiums and apartments. A five-member Condominium Owners Association (COA) Board of Directors (Board) manages the finances of the COA and helps maintain the development. Essex Marina City Club, L.P. (Essex) owns and runs the apartments.[1] The shared areas of the development are overseen by a Management Council consisting of two members of the COA Board, two representatives from Essex, and one mutually-agreed-upon independent member.

Plaintiff and appellant Elena Mondragon, a COA Board member, sued defendants and respondents Neil Kelliher, Peter Bergmann, Louise Pesce, Lahdan Rahmati, and Donna Bryce, all of whom, at one time or another, served as COA Board representatives to the Management Council.[2] Mondragon claims respondents breached their fiduciary duty by "their abject failure to comply with numerous documents that govern both the operation and maintenance of the Marina City Club … as well as the use and application of funds collected from members of" the

---

[1] Essex is a defendant in the lawsuit but is not a party to this appeal. Likewise, Seabreeze Property Management Company, Inc. (Seabreeze), which was the onsite manager of the development when Mondragon filed her lawsuit, is a defendant in the lawsuit but is not a party to this appeal.

[2] Mondragon also sued defendant and respondent Mahvash Rahmati, Lahdan's mother, on the ground that Lahdan's Board seat was obtained as a result of Mahvash's COA membership. We refer to Kelliher, Bergmann, Pesce, Bryce, Lahdan Rahmati, and Mahvash Rahmati, collectively, as respondents. Mondragon sued respondents derivatively on behalf of the COA, a nominal defendant.

COA. Specifically, she asserts that respondents have authorized the Management Council to spend money without first obtaining the approval of a majority of the Board or that the expenditures do not represent the opinions and/or decisions of a majority of the Board. She claims Essex and Seabreeze are liable because they failed to ensure the expenditures were being made pursuant to certain agreements.

Respondents filed a special motion to strike Mondragon's first amended verified derivative complaint under Code of Civil Procedure[3] section 425.16 (the anti-SLAPP statute), arguing that the gravamen of the complaint was Mondragon's disagreement with the Management Council's spending decisions and their opinions regarding expenditures—and those decisions and opinions were protected speech-related activity concerning a matter of public interest. The trial court granted the motion, and Mondragon appeals. We reverse.

## BACKGROUND

**1. The Marina City Club and its Management Structure**

The Marina City Club is a mixed-use real estate development built on land owned by the County of Los Angeles. The development comprises 600 condominium units, 101 rental apartments, 383 boat slips and related structures, various retail and commercial spaces, and several parking garages, tennis courts, and recreational areas.

The COA is the homeowners association for the condominium portion of the development. It is governed by a five-

---

[3] All undesignated statutory references are to the Code of Civil Procedure.

member Board made up of volunteer homeowners. The Board is responsible for managing COA finances, entering into contracts, enforcing various rules that apply to the condominium portion of the development, and imposing discipline when those rules are violated. The directors serve staggered two-year terms, with two seats up for election one year and the other three seats up for election the next year.

Essex owns the City Club apartments, retail and commercial spaces, parking garages, and recreational facilities. Together, the COA and Essex are responsible for maintaining and managing the various common areas in the development.

Over the years, Essex and the COA have disagreed about the management of the common areas of the City Club. In 1994, after litigation and a subsequent settlement agreement, Essex and the COA agreed to form a five-member Management Council to help manage the development. The Management Council consists of two representatives from Essex, two COA representatives from the COA Board, and one independent representative to be mutually-agreed-upon.

The document that formed the Management Council, called the "BK Settlement Agreement," states: "The Association Representatives shall at all times represent the opinion and/or decisions of the majority of the Board of Directors and may be removed for any reason at any time by a majority of the Board of Directors."[4]

---

[4] According to the June 2013 minutes of a special meeting of the COA Board, the settlement agreement would implement new Management Council procedures. The Board noted that it requested, in advance of Council meetings, the Council's agenda packet and motions that will be

At various points since 2017, Pesce, Kelliher, Bergmann, Bryce, and Lahdan Rahmati have been members of the Board. During their terms, the latter four respondents also served as representatives to the Management Council.

## 2. Mondragon's Lawsuit

In the operative pleading, Mondragon sued respondents for breach of fiduciary duty and accounting, and sued Essex and Seabreeze for breach of contract and accounting. In the breach of fiduciary duty claim, Mondragon alleged that respondents had a fiduciary duty to abide by all provisions of the City Club's governing documents; that they breached this duty by allowing the Management Council to spend COA funds without first seeking approval from the COA Board; and that by spending money respondents did not have the authority to spend, the COA suffered damages.[5]

Kelliher, Pesce, and Bergmann filed a special motion to strike the complaint under the anti-SLAPP statute (§ 425.16). Mahvash Rahmati, Lahdan Rahmati, Bryce, Seabreeze, and Essex later joined the motion. Respondents argued that the conduct underlying the allegations was their exercise of free speech concerning how the COA should spend its money and whether certain expenditures should be approved. Respondents also argued that Mondragon filed the lawsuit because she disagreed with them about those issues. Respondents did not

---

voted upon so that the Board could provide its input prior to those meetings.

[5] The parties do not challenge the court's finding that the third cause of action for accounting is derivative of the first cause of action for breach of fiduciary duty.

argue that Mondragon had pleaded a "mixed cause of action"—that is, a cause of action that rests on allegations of multiple acts, some of which constitute protected activity and some of which do not. (See *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).)

With respect to the second prong of the anti-SLAPP statute, respondents argued that Mondragon could not demonstrate a probability of success on the merits because she had not presented evidence of either breach of a duty or damages caused by such a breach. In particular, they argued that the settlement agreement does not require the Board to vote on proposed expenditures before the Board's representatives approve them in the Management Council.

Mondragon opposed the motion. She argued that her claims did not concern respondents' opinions regarding whether certain expenditures should be approved, but rather their violation of the governing documents—and those actions were not protected activity. Mondragon also argued that to the extent respondents met their initial burden, she met her burden of showing that her claims had minimal merit.

After a contested hearing, the court, which did not have the benefit of recent California Supreme Court authority on this subject, granted respondents' anti-SLAPP motion. As to the first prong, it held "that the gravamen of Plaintiff's complaint is her disagreement with the Director Defendants' opinion as to how the Association should be governed and the finances managed. Here, Director Defendants have shown that the complained of conduct

6

is protected under [section] 425.16(e)(4) and they have met their burden as to prong 1."[6]

As to the second prong, the court concluded that Mondragon had not established an ability to prove with admissible evidence a probability that she would prevail. First, the court held that Mondragon had not established that the Board members breached their fiduciary duty: The governing documents did not require that the Board express its approval via a formal vote, and Mondragon had "not presented competent evidence that the individuals in the Management Council did not act in accordance with the opinion of the majority of the Board of Directors." Next, the court also held that Mondragon had not submitted any evidence of causation or damages.[7]

Mondragon timely appealed the order granting the anti-SLAPP motion.

## DISCUSSION

Mondragon contends the court erred in granting the anti-SLAPP motion because her cause of action for breach of fiduciary duty is not based on protected activity. Respondents argue that "the record shows that she sued [them] to retaliate against them

[6] The court denied the motion as to Essex and Seabreeze. It held that the movants "did not make specific arguments as to how these Defendants engaged in protected activity and solely made arguments as to prong two of the anti-SLAPP analysis. Since Seabreeze and Essex failed to meet their burden under prong [one], the Court does not reach prong [two] as to these defendants."

[7] The court also found that the accounting claim failed because it was derivative of the breach of fiduciary duty claim.

7

for expressing opinions that she disagrees with regarding the [A]ssociation's finances." We agree with Mondragon.

## 1.    Applicable Law and Standard of Review

Under section 425.16, a defendant may move to strike claims " 'arising from any act … in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).) As relevant here, protected acts include statements or conduct made "in connection with a public issue or an issue of public interest." (See § 425.16, subds. (e)(3)–(4).)[8] Section 425.16 does not completely insulate a defendant's protected speech, however. Instead, it provides a mechanism "for weeding out, at an early stage, *meritless* claims arising from" protected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

Courts apply a two-step test when evaluating an anti-SLAPP motion. (*Baral, supra*, 1 Cal.5th at p. 384.) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Ibid.*) To do so, the defendant must "identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just

---

[8] The parties agree the first two categories of protected activity under section 425.16, subdivision (e), do not apply in this case because none of the underlying conduct concerns "a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1)–(2).)

evidence of liability or a step leaning to some different act for which liability is asserted.' [Citation.] To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis of liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute. [Citations.]" (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

If the defendant makes that showing, the plaintiff then must "demonstrate the merit of the claim by establishing a probability of success." (*Baral*, *supra*, 1 Cal.5th at p. 384.) This second step involves an analysis similar to that used to evaluate a summary judgment motion. (*Ibid*.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. [The court] accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id*. at pp. 384–385.)

We independently review an order granting a special motion to strike under section 425.16. (*Wilson*, *supra*, 7 Cal.5th at p. 884.) " ' "[W]e engage in the same, two-step process as the trial court to determine if the parties have satisfied their respective burdens. [Citations.]" ' " (*Abuemeira v. Stephens* (2016) 246 Cal.App.4th 1291, 1298.)

## 2. Respondents have not satisfied their first-step burden.

As discussed, at "the first step of the analysis, the defendant must make two related showings. Comparing its

9

statements and conduct against the statute, it must demonstrate activity qualifying for protection. [Citation.] And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims. [Citations.]" (*Wilson*, *supra*, 7 Cal.5th at p. 887.) The key here is the *acts* that form the basis of the plaintiff's cause of action and whether *those acts* constitute protected activity. (*Bonni*, *supra*, 11 Cal.5th at pp. 1011–1012.)

"Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16 [Citations.] Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral*, *supra*, 1 Cal.5th at p. 394.) Thus, we must consider whether any allegations of protected activity "supply the elements" of Mondragon's claim for breach of fiduciary duty "or merely provide context." (*Bonni*, *supra*, 11 Cal.5th at p. 1012.) If Mondragon "has alleged various acts as a basis for relief and not merely as background, each act or set of acts must be analyzed separately under the usual two-step anti-SLAPP framework." (*Ibid*.) Respondents "bear the burden of showing that each allegation supporting [Mondragon's] claim of recovery is one that rests on protected activity." (*Ibid*.) To the extent *any acts* are unprotected, the claims based on those acts survive. (*Ibid*.)

Put another way, if "a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims. [Citation.]" (*Bonni*, *supra*, 11 Cal.5th at p. 1011.)

" 'The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the

10

fiduciary duty; and (3) damage proximately caused by the breach.' " (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 932.) In her operative pleading, Mondragon alleged that respondents "had a fiduciary duty to faithfully enforce the provisions of all documents governing the operation, management, and control of the City Club, as well as provisions in those documents regarding the collection and use of … COA funds"; that they "breached their fiduciary duties to [the] COA and its members by violating the … governing documents," including by allowing "millions of dollars in expenditures of … COA funds to be approved by the Management Council, without the knowledge and/or approval of a majority of the" Board; and that their "failure to comply with the governing documents with respect to collection and disbursement of funds has resulted in rampant waste of funds belonging to members of the … COA."

For their part, respondents insist that the basis for this cause of action is Mondragon's dislike of how they "represented the [COA] on [the] Management Council (meaning she does not like the opinions they expressed with respect to various expenditures), and she does not like the way the Board conducted Association business (meaning she disagrees with the opinions of the other Board members regarding how various expenditures should be handled). … This is all conduct in furtherance of Respondents' exercise of free speech." That is, respondents contend that Mondragon's cause of action rests entirely on allegations of acts that constitute protected activity. (See *Bonni*, *supra*, 11 Cal.5th at p. 1010.)

As a preliminary matter, we note that the operative pleading does not mention *respondents'* opinions as members of the Management Council; instead, it asserts that respondents'

11

approvals of certain expenditures did not reflect the views or opinions of a majority of the *Board*. And while respondents' approvals or votes in favor of those expenditures may reflect their views and opinions and provide context for the breach of fiduciary duty claim, the cause of action was not based on protected conduct, but rather on violations of their fiduciary duty to act in the best interests of the COA. We also note that courts routinely reject anti-SLAPP motions based upon conduct like respondents' conduct. (See, e.g., *Greco v. Greco* (2016) 2 Cal.App.5th 810, 824–825 [breach of fiduciary duty claims against trustee based on wrongful taking of money from trust and estates not protected]; *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 728 [breach of fiduciary duty claims based on withholding information and improperly directing funds not protected, even though expenditure of money precipitated by board votes].)

Certainly, we recognize that voting can constitute protected activity. (See *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 183, fn. 3 [stating with respect to city council member votes, "voting is conduct qualifying for the protections afforded by the First Amendment"].) Nonetheless, voting is not per se protected activity. (See *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500, 1506 [stating, with respect to the vote of a nonprofit organization board member: "The mere act of voting, however, is insufficient to demonstrate that conduct challenged in a cause of action arose from protected activity."].) Here, Mondragon's claim on behalf of the COA arises from the act of spending money in violation of respondents' fiduciary duties. While the expenditure of money may have been precipitated by a vote by respondents when they were on the

Management Council, "the fact that protected activity may have triggered a cause of action does not necessarily mean the cause of action arose from the protected activity." (*Id.* at p. 1507; see *Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1218 [conduct challenged in action alleging city failed to comply with competitive bidding requirement was not officials' communications or deliberations, but their failure to obey state and local laws].) Thus, any vote by members of the Management Council was merely incidental to the claim for breach of fiduciary duty.

In any event, whatever Mondragon's true motives in bringing her lawsuit, and whatever other assertions she makes, the elements of her claim do not challenge respondents' opinions about expenditures or involve respondents' free speech rights or their right to petition. The elements of her claim challenge the fact that respondents approved expenditures that did not comply with the BK Settlement Agreement and other documents because they did not first secure the Board's consent, or they approved expenditures that did not reflect the views of the majority of the Board. Respondents had the burden to demonstrate that *this conduct* was protected activity. (*Bonni*, *supra*, 11 Cal.5th at pp. 1011–1012.)

Yet in evaluating the first prong of the anti-SLAPP analysis, both below and on appeal, respondents have failed to address that conduct in any meaningful way. Instead, they have conflated the challenged acts with what they describe as "the activity giving rise to the complaint," then argued such activity was "their participation on the Management Council and their alleged opinions regarding whether certain expenditures should be approved."

13

Again, respondents' opinions about expenditures while they were members of the Management Council are not the acts Mondragon challenges. And though they spill much ink arguing that their opinions were expressed in furtherance of their rights of free speech on a matter of public interest, they never extend their analysis to the acts actually alleged as the basis of Mondragon's claim. Put differently, although respondents "have paid lip service to the application of [section 425.16,] subdivision (e)(4), they make no effort to explain how withholding [proposed expenditures] information they had a fiduciary duty to divulge, or expending funds [without Board approval], is constitutionally protected conduct." (*Talega Maintenance Corp. v. Standard Pacific Corp.*, *supra*, 225 Cal.App.4th at pp. 728–729.)[9]

Because we conclude the challenged cause of action does not arise from protected activity, we reverse the order and need not decide whether the other requirements of section 425.16, subdivision (e)(4) were met; we also do not address the merits of the case under the second prong of the statute.

---

[9] *Lee v. Silveira* (2016) 6 Cal.App.5th 527, 542–543, cited by respondents, is factually and legally distinguishable from this case. The *Lee* court concluded it was "significant that plaintiffs—and not [the association]—brought this action against director defendants," and it was "clear from the substance of plaintiffs' declaratory relief claim that director defendants' acts in voting were not merely incidental to the allegations of wrongful conduct asserted against the majority block. To the contrary, plaintiffs allege director defendants engaged in such wrongful conduct as a result of *how* they voted in board meetings on public issues affecting [the association's] members." Here, unlike the plaintiffs in *Lee*, Mondragon filed a derivative suit on behalf of the COA and named the COA as a nominal defendant. And in this case, respondents' votes to expend monies were merely incidental to the claim, which concerned their violation of fiduciary duties.

## DISPOSITION

The order granting respondents' anti-SLAPP motion is reversed. Mondragon shall recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.